| | |
|---|---|
| STATE OF MAINE<br>PENOBSCOT, SS. | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO.: CV-2020-71 |
| WALTER J. DYER, Personal Representative of the Estate of JENNIFER M. DYER,<br><br>         Plaintiff,<br>v.<br><br>PENOBSCOT COUNTY, PENOBSCOT COUNTY SHERIFF'S OFFICE, PENOBSCOT COUNTY JAIL, NICHOLAS MITTON, TROY MORTON, LOUIS ST. PIERRE, JASON RAYMOND, and CHRISTOPHER WILSON,<br><br>         Defendants. | **COMPLAINT** |

NOW COMES Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, by and through counsel, and complains against Defendants as follows:

1. Walter J. Dyer was born on January 7, 1953 and resides in Greenbush, County of Penobscot, State of Maine.

2. Jennifer M. Dyer ("Jennifer") was born on June 25, 1980 and died on June 3, 2018.

3. Walter J. Dyer was appointed Personal Representative of the Estate of Jennifer M. Dyer by Letters of Authority issued February 7, 2019.

4. Defendant Penobscot County Jail ("PCJ") is a division of the Penobscot County Sheriff's Department. PCJ is located in Bangor, County of Penobscot, State of Maine. PCJ is a facility within the purview of the Correctional Division of the Penobscot County Sheriff's Office.

5. Defendant Penobscot County Sheriff's Department ("PCSO") is the law enforcement agency which operates PCJ. PCSO is a department of Defendant Penobscot County.

6. At all times relevant to this Complaint, Defendant Nicholas Mitton ("Defendant Mitton"), sued in his official and individual capacities, was a corrections officer who rendered services at PCJ. At all times relevant to this Complaint, Defendant Mitton was an employee and/or agent—actual, implied, or apparent—of PCSO, PCJ, and/or Penobscot County. At all times relevant to this Complaint, Defendant Mitton acted under color of state law.

7. At all times relevant to this Complaint, Defendant Troy Morton ("Defendant Morton"), sued in his official capacity, was Penobscot County Sheriff. At all times relevant to this Complaint, pursuant to 30-A M.R.S. § 1501, Defendant Morton "ha[d] the custody and charge of [PCJ] and of all prisoners in that jail," including but not limited to Jennifer. Upon information and belief, the Sheriff's duties include effectuating and managing the recruitment, training, supervision, and discipline of corrections officers serving at PCJ. At all times relevant to this Complaint, Defendant Morton was an employee and/or agent—actual, implied, or apparent—of PCSO, PCJ, and/or Penobscot County. At all times relevant to this Complaint, Defendant Morton acted under color of state law.

8. At all times relevant to this Complaint, Defendant Jason Raymond ("Defendant Raymond"), sued in his official and individual capacities, was a corrections officer who rendered services at PCJ. At all times relevant to this Complaint, Defendant Raymond was an employee and/or agent—actual, implied, or apparent—of PCSO, PCJ, and/or Penobscot County. At all times relevant to this Complaint, Defendant Raymond acted under color of state law.

9. At all times relevant to this Complaint, Defendant Louis St. Pierre ("Defendant St. Pierre"), sued in his official and individual capacities, was a corrections officer who

rendered services at PCJ. At all times relevant to this Complaint, Defendant St. Pierre was an employee and/or agent—actual, implied, or apparent—of PCSO, PCJ, and/or Penobscot County. At all times relevant to this Complaint, Defendant St. Pierre acted under color of state law.

10. At all times relevant to this Complaint, Defendant Christopher Wilson ("Defendant Wilson"), sued in his official and individual capacities, was a corrections officer who rendered services at PCJ. At all times relevant to this Complaint, Defendant Wilson was an employee and/or agent—actual, implied, or apparent—of PCSO, PCJ, and/or Penobscot County. At all times relevant to this Complaint, Defendant Wilson acted under color of state law.

11. At all times relevant to this Complaint, there was a sufficient agency relationship between the corrections staff responsible for the custody and care of inmates at PCJ—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson—on the one hand, and Penobscot County, PCSO, and PCJ, on the other hand, to render Penobscot County, PCSO, and PCJ vicariously liable for the acts and omissions of the corrections staff responsible for the custody and care of inmates at PCJ—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson. The agency relationship was actual, on the basis of employment, apparent, or implied.

12. On June 2, 2018, at or about 11:35am, PCJ, PCSO, and/or Penobscot County took custody and control of Jennifer as an inmate at PCJ. While Jennifer was an inmate at PCJ, Penobscot County, PCSO, PCJ, Defendant Morton, the corrections staff at PCJ—including Defendant Mitton, Defendant Raymond, Defendant St. Pierre, and Defendant

3

Wilson—and their agents were responsible for Jennifer's medical care, health, safety, and welfare. While Jennifer was an inmate at PCJ, she was unable to seek and/or receive medical care, other than through and/or with the assistance of the corrections staff at PCJ and/or their agents. Penobscot County, PCSO, PCJ, Defendant Morton, the corrections staff at PCJ—including Defendant Mitton, Defendant Raymond, Defendant St. Pierre, and Defendant Wilson—and their agents had a duty to ensure that Jennifer received necessary medical care.

13. On June 2, 2018, the day of Jennifer's intake at PCJ, medical providers, medical practitioners, nursing staff, and/or corrections staff at PCJ and/or their agents noted that Jennifer suffered from chronic obstructive pulmonary disease and a condition relating to her lung.

14. On June 2, 2018, the day of Jennifer's intake at PCJ, medical providers, medical practitioners, nursing staff, and/or corrections staff at PCJ and/or their agents examined Jennifer for impaired gas exchange and shortness of breath. They noted Jennifer's respirations to be uneven and labored. They noted her lung sounds to be diminished and to include wheezes. Medical providers, medical practitioners, nursing staff, and/or corrections staff at PCJ and/or their agents tested Jennifer's oxygen saturation and peak flows and found Jennifer to have low oxygen saturation readings and peak flows. These findings concerned the medical providers, medical practitioners, nursing staff, and corrections staff at PCJ and their agents. On information and belief, these findings regarding Jennifer's health concerned them because the findings indicated that Jennifer had serious medical needs, which—if unmet—posed grave risk of serious harm and death.

15. The medical providers, medical practitioners, nursing staff, and corrections staff at PCJ and/or their agents who initially became aware of Jennifer's concerning health conditions and concerning signs and symptoms notified other medical providers, medical practitioners, nursing staff, and corrections staff at PCJ—including Defendant Mitton, Defendant Raymond, Defendant St. Pierre, and Defendant Wilson—and their agents of Jennifer's health conditions, signs, and symptoms, as well as their concerns about the same. As a result, there was widespread knowledge and awareness of Jennifer's concerning health conditions and concerning signs and symptoms among the medical providers, medical practitioners, nursing staff, and corrections staff at PCJ—including Defendant Mitton, Defendant Raymond, Defendant St. Pierre, and Defendant Wilson—and their agents. On information and belief, these findings regarding Jennifer's health concerned them because the findings indicated that Jennifer had serious medical needs, which—if unmet—posed grave risk of serious harm and death.

16. According to Defendant Raymond's written report regarding Jennifer's death, he was briefed at or about 7:00pm on June 2, 2018, "that [Jennifer] was of concern to the medical department due to her oxygen saturation being low."

17. At or about 10:00pm on June 2, 2018, certain medical providers, medical practitioners, and/or nursing staff who had been rendering care to Jennifer departed PCJ for the night. Prior to their departure, these medical providers, medical practitioners, and/or nursing staff documented instructions in PCJ records that Jennifer should be sent to the emergency department of a hospital if, among other things, her oxygen saturation readings were below a certain threshold and/or her shortness of breath went unresolved by use of an albuterol nebulizer.

18. According to Defendant Mitton's written report regarding Jennifer's death, he checked Jennifer's oxygen saturation levels "due to [Jennifer] having difficulty breathing from a preexisting medical condition."

19. According to Defendant Wilson's written report regarding Jennifer's death, he "was briefed [that Jennifer] had 'COPD' and medical was aware of [Jennifer]'s medical situation."

20. At or about 4:28am on June 3, 2018, Jennifer communicated with Defendant St. Pierre, requesting medical attention, examination, and treatment.

21. In his written report regarding Jennifer's death, Defendant St. Pierre wrote this about Jennifer's communication to him and his responses: "[Jennifer] stated to me that she wanted the Nurse to come see her again and she wanted to talk to her. I informed her that Medical was not present and that I would inform the Supervisor. . . . I informed Sgt. Wilson that [Jennifer] wanted to speak to a nurse again. Sgt. Wilson said [']ok thank you.[']"

22. In his written report regarding Jennifer's death, Defendant Wilson wrote, "During the course of my extra shift [Jennifer] was complaining she wanted to go to the hospital. [Jennifer] stated she was having trouble breathing."

23. Defendant St. Pierre, Defendant Wilson, Defendant Mitton, Defendant Raymond and other corrections staff and/or their agents failed to arrange any medical attention, examination, or treatment for Jennifer in response to her request. Therefore, despite her request, they denied Jennifer basic, essential medical care

24. Defendant St. Pierre, Defendant Wilson, Defendant Mitton, and Defendant Raymond had no discretion to deny Jennifer basic, essential medical care. Pursuant to 30-A M.R.S. §

6

1561, "Any person incarcerated in a county jail has a right to adequate professional medical care . . . ."

25. At or about 4:44am on June 3, 2018, Jennifer was found in her jail cell, not breathing and with no pulse.

26. Jennifer's death was pronounced at PCJ at or about 5:21am on June 3, 2018.

27. The Chief Medical Examiner of the State of Maine found that the cause of Jennifer's death was acute intoxication due to the combined effects of buprenorphine and alprazolam. The Chief Medical Examiner found that a contributory cause of Jennifer's death was acute exacerbation of chronic bronchial inflammatory disease.

28. Penobscot County is vicariously liable for the acts and omissions of its employees and/or agents, including medical providers, medical practitioners, nursing staff, and corrections staff responsible for the care, custody, welfare, and medical care of inmates at PCJ—including, but not limited to, Defendant Mitton, Defendant Morton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson.

29. The Penobscot County Sheriff's Office is vicariously liable for the acts and omissions of its employees and/or agents, including medical providers, medical practitioners, nursing staff, and corrections staff responsible for the care, custody, welfare, and medical care of inmates at PCJ—including, but not limited to, Defendant Mitton, Defendant Morton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson.

30. The Penobscot County Jail is vicariously liable for the acts and omissions of its employees and/or agents, including medical providers, medical practitioners, nursing staff, and corrections staff responsible for the care, custody, welfare, and medical care of

inmates at PCJ—including, but not limited to, Defendant Mitton, Defendant Morton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson.

31. As a direct and proximate result of the acts and omissions of Defendants, as alleged above, Jennifer experienced conscious pain and suffering, and death. Her Estate suffered financial losses, including funeral expenses and pecuniary damages.

## FIRST CAUSE OF ACTION

### Negligence

### (Penobscot County, PCSO, PCJ, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson)

32. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-31.

33. Corrections officers rendering services at PCJ, including Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson have a duty to protect and supervise the persons in custody at PCJ. This duty includes ensuring the care, custody, welfare, and medical care of persons in custody at PCJ.

34. Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson breached that duty when they failed to render and/or facilitate basic, essential medical care to Jennifer.

35. Penobscot County, PCSO, and PCJ are vicariously liable for the acts and omissions of its employees, agents, and servants, including medical providers, medical practitioners, nursing staff, and corrections staff responsible for medical care of inmates at PCJ—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson.

36. As a direct and proximate result of the negligence of these Defendants, as alleged above, Jennifer experienced conscious pain and suffering, and death. Her Estate suffered financial losses, including funeral expenses and pecuniary damages.

## SECOND CAUSE OF ACTION

### Negligent Supervision

### (Penobscot County, PCSO, PCJ, and Defendant Morton)

37. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-36.

38. At all times relevant to this Complaint, Penobscot County, PCSO, PCJ, and Defendant Morton were required by law to take physical custody of Jennifer such as to deprive Jennifer of her normal opportunities to seek medical care and protection. Thus, a special, custodial relationship existed between Jennifer, on the one hand, and Penobscot County, PCSO, PCJ, and Defendant Morton, on the other hand. This special, custodial relationship gave rise to a duty on the part of Penobscot County, PCSO, PCJ, and Defendant Morton to protect Jennifer and to provide and/or facilitate necessary medical care for her until she could be cared for by others.

39. At all times relevant to this Complaint, Penobscot County, PCSO, PCJ, and Defendant Morton, on the one hand, and Jennifer, on the other hand, were in a special, fiduciary relationship marked by the great disparity of position and influence between the parties. This special, fiduciary relationship gave rise to a duty on the part of Penobscot County, PCSO, PCJ, and Defendant Morton to protect Jennifer and to provide and/or facilitate necessary medical care for her until she could be cared for by others.

40. While those special, custodial and special, fiduciary relationships between Penobscot County, PCSO, PCJ, and Defendant Morton, on the one hand, and Jennifer, on the other hand, were intact, Penobscot County, PCSO, PCJ, and Defendant Morton, and/or their agents and servants—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson—knew and/or had reason to know that Jennifer was seriously ill. Despite having developed knowledge of and/or having reason to know of Jennifer's serious illness, Penobscot County, PCSO, PCJ, and Defendant Morton, and/or their agents and servants—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson—failed to render and/or facilitate necessary medical care for Jennifer.

41. Upon information and belief, Penobscot County, PCSO, PCJ, and Defendant Morton were negligent in supervising their agents and servants—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson. Penobscot County, PCSO, PCJ, and Defendant Morton were under a duty to exercise reasonable care so as to control their agents and servants—including, but not limited to, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson—while acting outside the scope of their employment as to prevent them from intentionally harming others or from so conducting themselves as to create an unreasonable risk of bodily harm to them.

42. Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson harmed Jennifer and/or conducted themselves as to create an unreasonable risk of bodily harm to Jennifer while they were upon the premises of PCJ.

43. Penobscot County, PCSO, PCJ, and Defendant Morton knew and/or had reason to know that they had the ability to control Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson and/or knew or should have known of the necessity and opportunity for exercising such control.

44. As a direct and proximate result of the negligent supervision of Defendants, as alleged above, Jennifer experienced conscious pain and suffering, and death. Her Estate suffered financial losses, including funeral expenses and pecuniary damages.

## THIRD CAUSE OF ACTION

**Violation of 42 U.S.C. § 1983 — Deliberate Indifference to Jennifer's Serious Medical Needs in Violation of the Fourteenth Amendment to the Constitution of the United States**

**(Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson)**

45. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-44.

46. Jennifer suffered from objectively serious medical needs. Failure to meet Jennifer's objectively serious medical needs posed grave risks to Jennifer's health, welfare, and life. Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson were subjectively aware of Jennifer's objectively serious medical needs and the grave risks posed by a failure to meet those needs. Despite their awareness, these Defendants failed to meet Jennifer's objectively serious medical needs. The Defendants failed to provide and/or facilitate basic, essential medical care to Jennifer, thus denying her such basic, essential care. This failure to provide and denial of basic, essential medical care to Jennifer constituted deliberate indifference to Jennifer's objectively serious medical needs.

47. By this deliberate indifference to Jennifer's medical needs, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson, while acting under color of state law, engaged in an unnecessary and wanton infliction of pain and suffering. In so doing, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson deprived Jennifer of her right to due process in violation of the Fourteenth Amendment to the Constitution of the United States.

48. This deliberate indifference to Jennifer's objectively serious medical needs proximately caused her to experience conscious pain and suffering, and death. Her Estate suffered financial losses, including funeral expenses and pecuniary damages.

## FOURTH CAUSE OF ACTION

**Violation of 5 M.R.S. § 4682 — Deliberate Indifference to Jennifer's Serious Medical Needs in Violation of Article I, Sections 1, 6, and 6-A of the Constitution of Maine**

**(Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson)**

49. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-48.

50. Jennifer suffered from objectively serious medical needs. Failure to meet Jennifer's objectively serious medical needs posed grave risks to Jennifer's health, welfare, and life. Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson were subjectively aware of Jennifer's objectively serious medical needs and the grave risks posed by a failure to meet those needs. Despite their awareness, these Defendants failed to meet Jennifer's objectively serious medical needs. The Defendants failed to provide and/or facilitate basic, essential medical care to Jennifer, thus denying her such basic, essential care. This failure to provide and denial of basic, essential medical care to

Jennifer constituted deliberate indifference to Jennifer's objectively serious medical needs.

51. By this deliberate indifference to Jennifer's medical needs, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson, while acting under color of state law, engaged in an unnecessary and wanton infliction of pain and suffering. In so doing, Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson interfered with, and deprived Jennifer of, her right to due process in violation of Article I, Sections 1, 6, and 6-A of the Constitution of the Maine.

52. This deliberate indifference to Jennifer's objectively serious medical needs proximately caused Jennifer M. Dyer to experience conscious pain and suffering, financial losses, including medical bills and funeral expenses, and death.

## FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983 — Deliberate Indifference — Inadequate Recruitment, Training, Supervision, and/or Discipline of Corrections Officers in Violation of the Fourteenth Amendment to the Constitution of the United States**

**(Penobscot County, PCSO, PCJ, and Defendant Morton)**

53. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-52.

54. Upon information and belief, Penobscot County, PCSO, and/or PCJ had policies and/or customs, amounting to deliberate indifference, of employing corrections officers who were inadequately recruited, trained, supervised, and/or disciplined amounting to approval of denial of essential medical care to persons in custody at PCJ.

55. The policies and/or customs of employing corrections officers who were inadequately recruited, trained, supervised, and/or disciplined regarding the rendering and/or

facilitation of essential medical care to persons in custody at PCJ amounted to deliberate indifference to the objectively serious medical needs of persons in custody at PCJ—including, but not limited to, Jennifer. By their deliberate indifference, these Defendants deprived Jennifer of her right to due process in violation of the Fourteenth Amendment to the United States Constitution.

56. The customs and/or policies of employing corrections officers who were inadequately recruited, trained, supervised, and/or disciplined regarding the rendering and/or facilitation of essential medical care to persons in custody at PCJ—amounting to deliberate indifference—proximately caused Jennifer M. Dyer to experience conscious pain and suffering, and death. Her Estate suffered financial losses, including funeral expenses and pecuniary damages.

## SIXTH CAUSE OF ACTION

**5 M.R.S. § 4682 — Deliberate Indifference — Inadequate Recruitment, Training, Supervision, and/or Discipline of Corrections Officers in Violation of Article I, Sections 1, 6, and 6-A of the Constitution of Maine**

**(Penobscot County, PCSO, PCJ, Defendant Morton)**

57. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-56.

58. Upon information and belief, Penobscot County, PCSO, and/or PCJ had policies and/or customs, amounting to deliberate indifference, of employing corrections officers who were inadequately recruited, trained, supervised, and/or disciplined amounting to approval of denial of essential medical care to persons in custody at PCJ.

59. The policies and/or customs of employing corrections officers who were inadequately recruited, trained, supervised, and/or disciplined regarding the rendering and/or

facilitation of essential medical care to persons in custody at PCJ amounted to deliberate indifference to the objectively serious medical needs of persons in custody at PCJ—including, but not limited to, Jennifer. By their deliberate indifference, these Defendants interfered with, and deprived Jennifer of, her right to due process in violation of Article I, Sections 1, 6, and 6-A of the Constitution of the Maine.

60. The customs and/or policies of employing corrections officers who were inadequately recruited, trained, supervised, and/or disciplined regarding the rendering and/or facilitation of essential medical care to persons in custody at PCJ—amounting to deliberate indifference—proximately caused Jennifer M. Dyer to experience conscious pain and suffering, financial losses, including medical bills and funeral expenses, and death.

## SEVENTH CAUSE OF ACTION

**5 M.R.S. § 4682 — Denial of Adequate Medical Care in Violation of 30-A M.R.S. § 1561 (Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson)**

61. Plaintiff Walter J. Dyer, Personal Representative of the Estate of Jennifer M. Dyer, reasserts and realleges the allegations in paragraphs 1-60.

62. 30-A M.R.S. § 1561 provides that "[a]ny person incarcerated in a county jail has a right to adequate professional medical care . . . ." As a person incarcerated at PCJ, Jennifer had a right to adequate professional medical care.

63. Jennifer suffered from objectively serious medical needs. Defendant Mitton, Defendant St. Pierre, Defendant Raymond, and Defendant Wilson were aware of Jennifer's objectively serious medical needs and the grave risks posed by a failure to meet those

needs. Despite their awareness, these Defendants failed to meet Jennifer's objectively serious medical needs. The Defendants failed to provide and/or facilitate adequate professional medical care to Jennifer, thus denying her such adequate professional medical care.

64. By this denial of adequate professional medical care, these Defendants interfered with, and deprived Jennifer of, her right to adequate professional medical care in violation of 30-A M.R.S. § 1561.

65. By interfering with and depriving Jennifer of her right to adequate professional medical care, as alleged above, these Defendants proximately caused Jennifer M. Dyer to experience conscious pain and suffering, financial losses, including medical bills and funeral expenses, and death.


WHEREFORE, Plaintiff demands judgment against Defendants and seeks all damages available under federal and Maine law, together with interest and costs. Plaintiff also seeks award of his costs of suit, including reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C. § 1988 and 5 M.R.S. § 4683. He is represented in this matter by Jodi L. Nofsinger, Esq. and Adam J. Arguelles, Esq. of Berman & Simmons, P.A., 129 Lisbon Street, P.O. Box 961, Lewiston, Maine 04243-0961.

Dated:   May 28, 2020

/s/ *signature*
Jodi L. Nofsinger, Esq. # 8373
Adam J. Arguelles, Esq. # 6205
Berman & Simmons, P.A.
P.O. Box 961
Lewiston, ME  04243-0961
(207) 784-3576
NofsingerService@bermansimmons.com
ArguellesService@bermansimmons.com
Attorneys for Plaintiff

1704094

17